VIRGINIA LEE WELCH, petitioner-respondent,

*v.*

HENRY BAINBRIDGE BAKER, defendant-appellant.

[Argued March 24th, 1914. Decided June 15th, 1914.]

An order made in the court of chancery in divorce proceedings respecting the temporary custody of the petitioner's child (its welfare being regarded as of prime consideration with the court) was *held* to have been a proper exercise of the discretion committed by the law to the chancellor.

---

On appeal from an order of the court of chancery advised by Vice-Chancellor Howell.

On petition of Virginia Lee Welch against Henry Bainbridge Baker. The order appealed from directed that respondent during. the year *1915*, and succeeding summers, have custody of her child for one-half of the summer vacation during which the regular sessions of the school are closed, the first half being that division to which the petitioner is entitled, and the second half that to which the defendant shall be entitled.

*Messrs. Edward A. & William T. Day*, for the appellant.

*Messrs. Lum, Tamblyn & Colyer*, for the respondent.

The opinion of the court was delivered by

VREDENBURGH, J.

This appeal brings up a very narrow subject for determination. It is from an order of the court of chancery made December 16th, 1913, directing that the respondent during the approaching year of 1915, and the succeeding summers, should be entitled to have her child, Henry Martyn Baker (a boy at school, between thirteen and fourteen years of age), given into her custody for one-half of the summer vacation, with a prohibition that she should not take him outside of the United States.

Embraced within the grounds of appeal is an objection that the decree is erroneous in that it compelled the appellant to pay the costs of the proceedings, and a counsel fee of $500.

The parties to this controversy were duly married on November 19th, 1898, and from that date for several years lived and cohabited together resulting in the birth of their said child on July 11th, 1900. Afterwards they became estranged, and during portions of the years of 1905, 1906, 1907, 1908 and 1910, the mother visited Europe, leaving the father and boy living at home in this country.

In March, 1910, the mother brought suit for divorce against the husband in the court of chancery on the ground of his desertion of her for a period of two years or more, and obtained in that suit on October 27th, 1911, a final decree of divorce

from the bond of matrimony. On October 31st, 1911, she married Thomas Carey Welch, her present husband, and is living with him in his home at Manilla, in the Philippine Islands.

A decree *nisi* in the divorce suit had been obtained by her on April 17th, 1911. On September 20th, 1911, she filed a petition reciting that by the decree *nisi* it was ordered that further order as to the custody of said child be reserved, and concluded with a prayer that, as regards the custody of the child, provision be made in the decree in accordance with a written agreement between herself and the defendant set forth in her petition. That agreement was signed by both parties, was dated June 1st, 1910, under seal, and provides, as follows:

"It is hereby agreed that Henry B. Baker shall have the custody of his child, Henry Martyn Baker, and that, at the earliest opportunity, an order of the court shall be made to that effect, either in the pending divorce suit or otherwise as counsel for the parties may agree. This agreement is made because Virginia Lee Baker, the mother of the child, has no criticism to make of the way the father has acted toward the child and believes that it is better for his financial welfare to be in the custody of his father, who has no intention of casting any reflection upon the mother."

It will be observed that this paper was made a part of the record of the divorce suit, and was a solemn admission by the parties that even so late as June, 1910, the conduct of each toward the child had been beyond criticism by the other, or in other words, that neither party had cause of complaint against the other respecting the treatment of the child.

No useful purpose can be served by specific references to the proofs before the learned vice-chancellor which led him to make the order in question. The propriety of such orders for the custody of infant children of divorced and separated parents is necessarily committed very largely to the discretion of the court of chancery.

After examination of the case and the evidence, we think the vice-chancellor was entirely justified in making the order awarding the little boy to the keeping and care of the mother during the short period mentioned in it. Her residence in her far dis-

tant home will require her, in order to reach the child, to devote many weeks of travel over sea and land, attended with personal risk and large expense, and in view of these circumstances the time given for her visit to the child does not seem to us to be excessive.

There is nothing in the case which stamps the mother as immoral, or unfit to have the custody, temporarily, of her son.

The vice-chancellor was evidently convinced by the mother's testimony, taken in his presence, and by her bearing, and by the other circumstances in evidence before him, that her anxiety to see her boy was genuine; that the confidence of the court in her would not be violated, and that she was worthy of the trust reposed in her by the terms of the order. A mother's love for her child comes from a higher than human source, and cannot be measured nor weighed by precise judicial calculations. We coincide with the result the vice-chancellor has reached.

The costs and counsel fee allowed below we do not deem excessive, nor unreasonable, under the circumstances, and the order should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER—9.

*For reversal*—None.